Thank you your honor. I'd like to reserve three minutes please. Okay, we'll try to help. Thank you. May it please the court. I want to concentrate this morning on the disparate impact issue because I think that's the the larger issue raised by the case. So what we're asking the court to decide is what is required to prove a disparate impact claim under the Fair Housing Act. The first step in any disparate impact claim is to identify the policy or the rule at issue and from that identification at that point one is able to determine what who is the population that is affected and what is the effect. But that identification of the rule is someplace where many disparate impact cases fall down. For example, in the Supreme Court's inclusive communities case, the Texas Department of Affairs Community Affairs versus inclusive communities, the plaintiffs really were unable to identify a specific policy that was at issue that was causing what they alleged was the discriminatory effect. There was really no policy where the department was trying to make, was making multiple decisions over time on how to allocate tax, low-income tax housing tax credits and that fact that there was not really a policy coupled with the the fact that there were developers proposing projects and many other actors in making the decisions or leading to the decisions. Could I jump to a few questions? I have a bunch of questions for you. So absolutely. One of them is, so I understand the challenge to the increasing the security deposit, that policy which applies across the board to all of the residents in the public housing. But it seems like the other two policies that you're trying to challenge, the paying for the last tenant and also the late fee policy, wouldn't apply to everyone because they would depend on whether the previous tenant hadn't paid or they might depend on whether you paid late four times. And so for those two, I have a couple questions. One is, what is the basis for standing for those other two policies? Because I didn't see any allegations that your individual plaintiffs suffered from either one or anything about the organization dealing with those policies as opposed to the security deposit policy. And then the second question is, how do we know if there's a disparate impact of those? Because we can't assume it's the exact same statistics as the population of the public housing. Let me answer the second question first. It's a policy that's imposed on a group. Whether or not one specific person is actually, the policy is that they suffer under that policy isn't really tested for disparate impact. It's the population that's subject to the policy. But if they never pay late, then they'll never have this problem of their security deposit being held. What is the harm that follows from the policy? Or maybe you're subjected in theory to having to pay for the previous tenant, but if your previous tenant paid up, then you don't have to pay late. On the issue concerning the having to, if you pay late, losing your security deposit, that's a threat that is made to all the residents. And it is a threat that it's not made to the non-public housing residents. So regardless of whether or not you ever pay late, you are your public housing status. So the Fair Housing Act covers discriminatory housing practices that have occurred or are threatened to occur. So it also includes things that are in the future that could happen to you. And one of our plaintiffs, Ms. Pena, still resides there and still has paid the $180 deposit and is subject to having her deposit withheld, even if she is not owing money when she leaves, if she did not make timely payments. So that... And your argument is that she's pressured in ways that other water customers are not to pay on time because she risks not getting her deposit back? Correct. In addition to the 1.5% late payment fee that everyone has subject to. So it's basically a punitive measure that's only imposed on the public housing residents or threatened to be imposed on the public housing residents. And as far as standing goes, what I just said about Ms. Pena, she definitely has standing because she's under threat of that enforcement of that rule. As far as the other rule, the rule concerning having to pay, having to clear the prior residence bills, I would say that what the Fair Housing Council, the fact that they came in and were brought in because of the discriminatory housing practices that were alleged to be going on with respect to the public resident, public housing residents, that they would have standing to challenge that rule as well because they expended resources in intervening and attempting to... Let me ask you about this policy of having to pay for the water bill of the prior tenant. Is that actually still in effect? I mean, I viewed the record as somewhat ambiguous on that point. I don't know if they're still doing it after the settlement with the housing authority, with the county. After we settled with the county, the district made some changes, so I don't know if they're still doing that. So that may or may not still be on the table. Okay. So did I answer your questions, Judge Friedland? Yes, I think you did. I'm not sure though about the... Well, I guess this prior tenant policy, if it doesn't exist anymore, that may be the bigger problem than whether the organization really expended funds on it. I couldn't tell from what we had in terms of the allegations and what we had in the record about whether the focused on the deposit, but that cluster of practices was at issue with the housing authority contacting the Fair Housing Council in the first place because that was occurring, that they were requiring the new tenants to pay off the bills of the prior tenants since the county was not doing that. So getting back to what's at issue here is that here we actually had for sure the security deposit rule, challenged that rule and said, you're applying a rule to public housing tenants that you're not applying to the rest of the water customers. And that because of the burdening people that are more likely to be members of protection classes under... Sorry, can I jump in on this one now on the merits? So I think you understandably try to frame the district interest on this as just recovering its finances or having enough finances. And if that were the purpose, it seems like giving everyone a higher deposit would make a lot more sense. But if we view the purpose as trying to have enough of a deposit to ensure that that tenant covers the water payments and not having to push it off onto others, the next tenant or anyone else, spread it out among others and make it be for that tenant, there does seem to be a government interest in getting a security deposit from those tenants who don't have a First, do you have a response about why that's not a legitimate interest? And second, if we take that as an interest that is legitimate, is your argument that it's still too much? It's not necessary to charge this much and we should be looking at a lower amount? Well, it seems to me that you couldn't look at your customer base and decide that people in a certain zip code had to pay more of a deposit because people in that zip code seem to default more. That just seems to stereotype everyone in the public housing. But I'm not sure it's a stereotype. I mean, they actually have a to other people where a lien could be against the landlord's property. That seems like a real difference. That means it's hard to recover for that property's bill. I would say, though, that there are two government entities. They certainly had more of an ability to work it out with the county than the public housing residents. Why do you say that? Where in the record is there any evidence that because it's a public entity, they can, quote, work out better? Well, they have various. They could have filed a declaratory relief action. They could have sought to do an intergovernmental agreement, which is what set up the water district in the first place. And the district court turned those alternatives down. What's our scope of review? No, no, no. The district court never reached those. The district court said we were unable to show a disparate impact, period. That was the end. So the scope of review is de novo. Okay. But it seems to me, if I can say this in very simplistic terms, if there's a bad guy, it seems to me it's the county that refuses to treat itself as a private landlord, thereby displacing the burden on the tenants. But given the fact that the county says, sorry, you can't place any liens on us to enforce the water bills that you would be able to place upon private owners, I'm not sure what the water company is supposed to do to protect itself, because these people really are, the tenants in the Edwards Circle really are in a different situation. And the water district is in a different situation because of the way the county behaves in response to the request for a lien. Well, two things. One is that the county had, and the district put this in the record, the county said cut off their power, I mean, their water after 30 days. So there shouldn't have been large amounts of water bills piling up. And the other thing is that- It just goes to the amount, right? So I mean, they might have a legitimate interest in getting a bigger security deposit. And then the question would be, is this amount too high? Well, yes, because the amount didn't bear any necessary relationship. It was just eyeballing, this is the range. Some persons may have left in the past with up to $180 worth of bills, so we're gonna make it that. That is the level we're gonna peg it at. I understand your concern, but I believe the amount of money is so small in this case as to be de minimis that the- Well, that's true if we see the interest as the district's finances overall. But if the interest is recovering the money from the right property, that is a rational interest at least. And you might have an argument that they're asking for too much because actually, you can never really incur a debt of more than 120 or something. But I have trouble, I mean, should we remand? If we agree that they have a legitimate interest, would you want a remand to sort out what the amount would be? Well, I think at this point, the record's closed. I mean, it was after summary judgment, after all the discovery had been completed. So do you think we, in the first instance, I mean, this wasn't an issue that district court reached. So we, in the first instance, have enough before us to rule on that. What the district has said is its interest was to maintain its solvency. It didn't express that we just need to make sure that we get this small amount of money from the county. I mean, I understood them to be arguing both, that they wanted to recover from this tenant because they couldn't recover from the landlord because of the lien policy, and also the solvency. And I agree with you, your argument is much stronger on solvency, but I'm not sure we can ignore their other argument. And that's where this comes up. But so I guess I'd still like to know, I mean, if we think they have a legitimate interest, enough of a substantial, whatever the terms are legitimate, substantial, there are a bunch of different terms on this step two inquiry. But if we think they pass the step two interest, then do we need a remand on essentially the tailoring, whether we call it the necessary part of step two or step three as a whole? Do we need a remand for that? Or do you want us to reach that? Or do you think you just lose at that point? I'm not sure. No, no, I think we need a remand to actually develop that more. Yeah, don't be nervous about time. We'll make sure you get a chance to respond. I've got one. I should know the answer to this, but I do not. What's the average water bill for one of the tenants here in the monthly bill for one of the tenants in the Edwards Circle? I thought it was more like $30, maybe. Jeff, I'm sure Jeff knows the answer. I'll get it from the other side then. Okay, well, let's hear from the other side, and we'll give you a chance to respond. Okay, thank you, your honor. Mr. Matura. Good morning, and may it please the court. My name is Jeff Matura, and I represent the district in this matter. I think the issue before the court and what was before the district court is simply whether the plaintiffs met their burden to establish a prima facie case of disparate impact under the Fair Housing Act. There's a lot of briefing on that issue that's before you, and a lot of conversations about what the standard is and what the evidence was. But we all know, we all know as we sit here today, what the standard is, because that's what the Supreme Court told us from the 2015 case. And so really, when you boil that down, really the question is, did plaintiffs present sufficient evidence to show robust causation between the policy and the statistical disparity with respect to the residents of Edwards Circle? And the district court judge in this case, I think, said it just right. He said that 100% of the members of the protected groups who reside in Edwards Circle have to pay the increased security deposit fee. But, and the but is the most important part, but so does everyone else. But that's not true, because the other customers do not pay that higher security deposit. So I really have trouble understanding how the district court thought that was the relevant comparison. Because that goes then to what is the comparison group? Are you looking at all customers of the district? Are you looking at all residents of Pinal County? Are you looking at all public housing residents of Pinal County? Or what we did here in this case, are you looking at residents of Edwards Circle? Why would you do that? You have this policy applying to Edwards Circle. So the question is, is it unfair to apply it to them and not to others? You look at them compared to the others who are the customers, don't you? No, I don't think you do. I think you look at the subset of those who reside in Edwards Circle. This is a this is and to go back to what Judge Fletcher said during the prior questioning. And this is not a problem that the district created. This is a problem that landed on the district's feet because of the county's unwillingness to be a landlord. Yeah, that may be true. But that doesn't mean I agree with your present argument. It does seem to me that the I mean, the case is brought here on a theory that the Water District has violated the Fair Housing Act with respect to these tenants in at Edwards Circle. And you can't compare them within the circle. You've got to compare how do they treat their other customers? Well, the customers don't have to pay the hundred and eighty dollars. Now, you may win in the sense that the hundred and eighty dollars may be justified. But it seems to me that the prima facie case has been shown. Well, OK, well, then that goes to the debate of what is the correct comparable group. Right. And that's talked about in the briefing. And what the district court relied upon was comparing Edwards Circle. Who's being impacted by this policy? And so is in Edwards Circle. And and again, to go back to kind of the big picture of the line, the big line is, does this policy cause any of the statistical disparity within that population? For all we know as a district, we don't know who's going to live there until they fill out an application and request water. For all we know as a district, it could be just random example here. I'm sorry. It could be 30 year old white males who make up every who occupy every spot within Edwards Circle. So we're not our policy is not. Why are you talking the fantasy land? We we know that that's not the case. But that that kind of drives home that our policy is not causing any statistical disparity. You're talking about disparate treatment. Let's talk about disparate impact. No, that's that's what I mean. So the statistical disparity that they have to show to establish a prima facie case of district impact is not we don't our policy is not causing that. But on your approach, how would you ever have a disparate impact case? Can you describe how your approach would allow there to be a district disparate impact case? Well, you know, we'd have to have a policy that somehow impacted that statistical disparity, right? Either either was somehow, I don't know, somehow had an increased effect upon African Americans or, you know, single household females or whatever it might be. But isn't that always going to be because of some background thing that isn't your fault? I'd love for you to give us a hypothetical where there could be a disparate impact claim if if you're always going to limit the population you look at to the people who are affected by the policy. That's just not how I understand it to work. But I think what the district court judge was trying to get at was that every one, regardless of their protected status, status, Edward Circle pays the same security deposit fee. So it's not a policy that's causing a statistical disparity within that population. That's not the answer. That's the problem. OK, I'm sorry if I didn't answer your question. Well, I think what you're hearing from all three of us is that we disagree with the district judge's conclusion that there's no prima facie case. OK, we better move on to the next step, which is, can you justify it as a rational response to the conditions on the ground? Let's talk about then the second step. Judge Freeland, I think you had questions about this to Ms. Brancard. The second step in the burden shift in analysis is, do we have a legitimate government interest for the amount of the security deposit? I'm sorry? A legitimate business interest in the amount of the policy that we charge. And Judge Freeland, I think you hit the nail on the head. We raised two arguments. One is to protect our finances across the board. I think that's a weaker position for the district to take. But the second one is because it's an amount that these residents—we have actual defaults by these residents. We have actual unpaid bills by these residents. And so that was what was also driving the district's decision about having increased security deposit fee. Now, that's step two in the analysis. Then if we meet that burden of a legitimate business interest, which I would suggest that we do—charging a bit more security deposit to cover known delinquencies seems to be, in my view, a legitimate business interest—the burden then shifts back, of course, to the plaintiffs to either to come up with some alternatives that are non-discriminatory but still meet our legitimate business interest. And I would tell you and suggest that the record is devoid of any evidence that the plaintiffs were able to come up with any alternatives to then satisfy that third step in the burden shifting analysis. So I have trouble understanding whether this should be a step two problem or a step three problem. But I think step two is, is your policy necessary to further the legitimate business interest? And so the necessary part of step two would seem to be your burden to show that this amount of money is necessary. And I can't—it seems very thin on this record whether you have shown that this is necessary. Like, why couldn't it be $120 instead of $180? Well, I think that's a fair point. I'm not so sure there is much in the record that gets to why it's $180 versus $150 or $190. Do we have in the record the average monthly water bill for tenants at Edwards Circle? Yeah, I'm sorry, Your Honor. I don't think we do either. But I'm sure Ms. Brancart and I could submit a supplement to that if you would like that. We could figure that out. But doesn't this feed into Judge Friedland's concern? At some point, if we're getting into the fine grain as to whether or not $180 is too much or $120 would be the right amount, I'm not sure we're the appropriate court to be making that decision in the first instance. And I would agree with you, Judge Fletcher, on that broad point. I don't think this is the right forum for you all to decide what the right number is, nor do I think there's evidence in the record from which you could fairly make that conclusion. And I don't want to speculate as to what the right number is. But I would suggest, based upon the evidence in the record, that we did show it was necessary to serve or further legitimate business interests, because we have actual provable evidence of consistent defaults that the county is unwilling to pay as the property owner. We had to be able to show that some higher amount is necessary, but I think you just acknowledged that you haven't really shown that this particular higher amount is necessary. But, Judge Freeland, I view that as a step three challenge, not a step two in the analysis. We've shown that this policy, this increased security deposit, furthers and serves our legitimate business interests. I think it goes then back to the plaintiffs to present evidence and say, well, but there's some alternative, and that alternative could be a lower amount. Well, I think it depends whether you call the policy a higher security deposit policy or whether you call the policy $180 security deposit policy. I'm not sure how we know that it should be the first and not the second. Yeah, I just, I think there's evidence in the, I guess I'll say this. I think there's evidence in the record about why the district increased the security deposit fee for those who live within Edwards Circle. I think there's fairly evidence in the record as to the why. I think, Judge Freeland, you talked about that earlier. I think the record is devoid of evidence of any alternatives offered by the plaintiff. I think that's where that analysis goes. So, can I ask you about the other two policies? Sorry, I might have interrupted someone, though. No, please go ahead. So, I think you have just denied that the third policy exists, but it seems like that's contrary to your responses in discovery. So, I'm not really sure how you're getting around ER-152, where it seems like you admitted that there was this, I'm sorry, I'm sorry, I guess it's the second one that is ER-152, where the four times a year policy is admitted. That seems like you're admitting there is this late payment policy. So, there is no policy. The district does not have these other two, quote-unquote, policies, as are referenced in the briefing, are not policies the district has tried to implement, has enforced. So, the district answered admit to the statement effective January 1st, 2015. The district adopted a policy that a public housing customer was late four times within one year, the customer service deposit refund would be made at the board's discretion, late payment policy. I mean, that's a quote, and you said admit. So, I don't understand. So, on that particular language, Your Honor, it's never been, so I will agree, yes, we admitted that. It has never been enforced, applied to anyone, charged, certainly not these, no one, I won't even say not these plaintiffs, I'll say no one. There's no evidence anywhere in the record through all of discovery that these policies, as they're referenced, have ever been applied. Well, I think Ms. Brancart was arguing, though, that that doesn't matter because by having the policy, you've created stress for all these tenants. They can't pay late the way other customers can. I mean, why isn't that an impact of having the policy, even if, I mean, maybe you've put everyone into such fear that you haven't had to actually do it. There's zero evidence of any of that throughout the entire case or in this record of fear, of uneasiness, of stress related to these, what we're calling policies. I don't call them policies because they're not, I don't view them as policies, but there's zero evidence. There's no data. There's no facts to support it. It wasn't, you know, there's nothing. They are, at most, I would say, they are, I don't even know what to call them. I don't want to make up the word. I was going to say theoretical something, but I'm not sure what the right word is. They are not policies that are against anyone, including these tenants. So then why did you admit it? You know, Your Honor, I don't have that answer on the tip of my tongue. I wish I did. I don't recall specifically what we were thinking at that time, but we'll own the admission. We'll own the admission. But then if you own the admission, we've got to deal with whether this policy makes sense, and I don't understand how it does. Why not have that policy for all your customers? But it's a policy. Let's say it's a policy. It's a policy that's never once been enforced. Well, the reason you don't have the policy for all of the customers is that you don't even require the security deposit for the other customers. So this is just part of the security deposit. Well, I think they do. It's just lower. Oh, do you have security deposits for others? We do. We do. So just to be clear, what is the security deposit for the non-Edward Circle customers? Yes. So thank you, Judge Fletcher. Just to be clear on that point. So the security deposit for the non-Edward Circle customers is $55. I see. Oh, I'm sorry. That's OK. So it's $180 versus $55. Do we know what the average rent is that's paid by the tenants at Edward Circle? I'm trying to get a sense on how burdensome this is in terms of sort of the overall rent or the first month rent deposit and so on. I mean, $180 for some people isn't much money. $180 for other people, that's real money. Yeah, Your Honor, I'm sorry. I don't know. Did I cut you off earlier? Did you have another question? I mean, I just don't understand how you can have it both ways. If you own your admission, then I think you've got to defend this policy. And saying it doesn't exist is just going back on not owning the admission. So I'm wondering how you could defend this policy. Because there's no evidence of this policy ever being applied against anyone, including these. I don't want to say including these plaintiffs. It's everyone. It's everyone. There's no evidence of this ever being applied against any individual of Edward Circle or the outside Edward Circle residents. So is your position, Mr. Matura, as to these two policies, the late payment and the previous tenancy policy, that there's no concrete injury alleged by the plaintiff and therefore there's no standing to press them? That's correct. That's correct. There's zero evidence, either during discovery or in the record before this court, of these plaintiffs. So is there some way that we can bind you to the idea that this policy doesn't exist? I mean, if you really aren't going to do this, then the tenants could be told that this isn't a policy. But it seems like there's some uncertainty here. I don't think there would be any problem whatsoever with the district telling all of its residents, including those at Edward Circle, that these are not policies that are enforced. They've never been enforced. There's zero evidence of any of that. And what about the of making someone pay for the previous tenant? What's the status of that? Again, that's discussions that we had with the county about trying to get the county to step up and pay for the prior tenants. That's never been something that's been enforced against someone new coming in. We've never denied water service to a resident because a prior tenant had a delinquency or they didn't pay the prior tenant's delinquency. We've never denied water to someone for that reason. Under the current system, maybe I just want to say, the current facts on the ground, are tenants told that there is a policy that if you make four late payments during the course of a year, that the water district retains the discretion not to return the deposit? Are they told that? Whether or not you do it, I'm asking you, are they told that that's a possibility? No, your honor. No, I don't have any evidence, but that's what they're told. I know I'm over my time. Does anyone else have any questions? Otherwise, I will pass the baton. I think not then. Okay, thank you, everyone. Thank you. Let's put three minutes on the clock for response. I think you're muted. Thank you. Thank you. There we go. Yeah. I just have a couple things to say. First of all, there is evidence in the record that the district did, in fact, require public housing residents to pay off the prior residents' bills. And in fact, in deposition, when one of the district employees was questioned, well, what if they didn't do it? What if they didn't pay them back? It was like, well, then they won't get the housing. So at this point, though, it seems like the district is saying we're not doing this anymore anyway. So is the issue moot? Or do we need to remand for the district court to figure out whether actually this policy exists or not? Yeah, I don't think it's moot. I don't think that we could say that it's moot at this point. You're not asking for damages for the past tenants, though, right? It's only going forward? No, it would just be going forward for that specific policy. Yes. So, yes. So, I mean, it seems like somehow we could have settlement of these issues or something. I mean, your opposing counsel is saying these aren't policies. If everyone agrees they're not policies, then we have solved that issue going forward, I think. We just need to lock them into that? That one. But my understanding, and I don't have my hand on this citation, but that the late payment policy is part of what was told to people. I mean, that was part of the, here are the rules that go with your water bill. So it wasn't just, it didn't come out of thin air. If they're saying not anymore, though, is that something we could resolve somehow? Well, I think we could resolve that, yes. But I don't know if it's necessarily not published anymore. But if they're not going to enforce that, then yes, that's something that could be resolved, I believe. I mean, should we do that through mediation, through our court? Do you have a suggestion of how we could resolve this issue? The two policies that you have challenged, but they say don't exist, it seems like there should be room to just settle this somehow and resolve that these are not policies and tell the tenants that. I agree. I agree. Or to say it a different way, if we were to send this back to the district court saying, listen, we disagree with your holding that there's no prima facie case, but we don't have enough evidence in front of us. And we certainly don't have a decision by the district court on the point to decide whether or not $180 is excessive in relation to the legitimate business interest of the district. Well, once you're back in the district court, you can solve those two issues pretty fast. Correct. I'm with what I think Judge Friedland is. I don't think either of those issues look as though they're resolvable. My guess is you can sort that out by maybe by a stipulation or something. That's possible. Yes. But I would say on the less discriminatory alternatives for the deposit, the county suggested that they pursue collection actions against people who left owing money. And the district didn't want to do that. But by saying that they're entitled to increase the deposits for the public housing residents overall, it seems like that they are just trying to make it easier for them to collect money. Well, of course they are. Yeah, exactly. But is that a less discriminatory alternative? Well, it depends on how hard it is to go after somebody with a collection action afterwards. Exactly. But they would have to go after collection actions against other people who left, who were not in public housing, who were not tenants. People, if they have arrears owed by other people, they would have to go after them with collection actions. That strikes me as maybe this is something that really isn't something for us to sort out. Okay. Any further questions from the bench? Okay. Thank both sides for your helpful arguments. Southwest Fair Housing Council versus Maricopa Domestic Water Improvement District now submitted for decision. Thanks to both of you. Thank you.
judges: W. Fletcher, Bea, Friedland